**GORSCHE FAMILY PARTNERSHIP,**
Appellant,

v.

**MIDWEST POWER, a DIVISION OF MIDWEST POWER SYSTEMS, INC., and the Iowa State Utilities Board, Appellees,**

and

**Office of Consumer Advocate, Intervenor.**

No. 93–1872.

Supreme Court of Iowa.

March 29, 1995.

Timothy A. Lynch of Van Orsdel & Lynch, L.C., Des Moines, for appellant.

David Lynch and Terry R. Fox, Des Moines, for appellee Midwest Power.

Gary Stump and Susan Allender, Des Moines, for appellee Iowa State Utilities Bd.

Daniel J. Fay, Des Moines, for intervenor.

LARSON, Justice.

The Gorsche Family Partnership owns farmland in Warren County, Iowa, on which there is a 161,000 volt (161 kV) electric transmission line. Midwest Power requested a franchise to construct a second line, carrying 345 kV, on the same easements (which would be widened by twenty-five feet on each side). The partnership complained that the line as newly constructed would not be "near and parallel to the right-of-way of [a] railway[ ] or along the division lines" and would therefore violate Iowa Code section 478.18 (1993). The Iowa Utilities Board overruled this objection and granted the franchises. The district court affirmed, and so do we.

Regarding the location of electric transmission lines, Iowa Code section 478.18 provides:

> Said transmission line shall be constructed near and parallel to the right of way of the railways of the state or along the division lines of the lands ..., wherever the same is practicable and reasonable, and so as not to interfere with the use by the public of the highways or streams of the state, nor unnecessarily interfere with the use of any lands by the occupant thereof.

We have interpreted "division lines of the lands" as section lines, quarter-section lines, and quarter-quarter-section lines that divide land into 640–acre, 160–acre, and 40–acre tracts, respectively. *Hanson v. Iowa State Commerce Comm'n*, 227 N.W.2d 157, 159 (Iowa 1975).

The existing 161 kV line uses structures called "H-frames," which are two poles spaced sixteen feet apart with bracing between them. These structures are located approximately 650 feet apart. Midwest Power plans to rebuild and upgrade the existing 161 kV line at the same time it constructs the new line and to replace the existing H-frames on the 161 kV line with single-pole steel supports. The new supports would carry both the 161 kV and 345 kV lines and would also allow the transmission lines to be carried higher, thus allowing a greater span (approximately 1200 feet) between support structures. In addition, any electrical or magnetic emissions from the line would be reduced with the increased height.

The issue is whether construction of the new transmission line along the property division line (here there are no railroad rights-of-way) is "practicable and reasonable" under section 478.18, in view of the fact that the diagonal line already exists on the land and will remain there.

We have not attempted to formulate a precise definition of "practicable and reasonable," nor does it appear that these terms would lend themselves well to such a definition. Nevertheless, two of our cases lend some insight. In *Hanson* several landowners objected to a transmission line that crossed their land diagonally, following neither railroad rights-of-way nor land division lines. 227 N.W.2d at 161. In that case, the power company had compared three principal routes: (1) a line tracking land division lines, (2) a line following railroad rights-of-way, and (3) a line in a diagonal direction. The utility chose the diagonal route because its shorter length was less costly, affected fewer landowners, and required fewer support structures. *Id.*

Despite the utility's preference for the shorter route, and the approval by the commerce commission (predecessor to the utilities board), we held in *Hanson* that the

utility company had violated the predecessor to section 478.18:

> The question is not simply whether a diagonal line is more practicable or reasonable than a railroad or land division route.... Rather, the question is whether the utility has shown that at given points, departure from the railroad or land division route is permissible because adherence to such a route would be impracticable or unreasonable at those places.

227 N.W.2d at 163. We held that the statute's "wherever" requirement meant "that a utility must start its planning with railroad or land division routes" and that the utility could deviate from these routes only at "certain points of impracticability or unreasonableness." *Id.* This case therefore recognized a virtual presumption in favor of land division lines and railroad rights-of-way, if such routes are practicable and reasonable.

A subsequent case, *Anstey v. Iowa State Commerce Comm'n*, 292 N.W.2d 380 (Iowa 1980), affirmed and applied the *Hanson* rationale. In *Anstey*, the power company's plan "began with division line locations and adhered to them except when, in the judgment of engineers, it was not practicable or reasonable to do so." 292 N.W.2d at 388. The affected landowners objected to a number of location and design features of the line and argued that several digressions made from railroad or division line routing were improper. *Id.* at 387. We held that the power company had not violated section 478.18 because the digressions from railroad and land division lines were "based upon engineering considerations of practicability and reasonableness." *Anstey,* 292 N.W.2d at 389. ("[N]either section 478.18 nor *Hanson* requires us to determine as a matter of law that the alternative with the fewest deviations should be approved...." *Id.* at 388).

Midwest Power argues that the case at bar is quite different from *Hanson,* and *Anstey,* primarily because the existing easement makes using division lines impracticable and unreasonable. Also it maintains that the final clause of section 478.18, that the line not "unnecessarily interfere with the use of any lands by the occupant thereof," requires that the route track the existing route.

■ When we review agency action, the issue is whether its decision is supported by substantial evidence when the record is considered as a whole. *See* Iowa Code § 17A.19(8)(f) (1993). This case turns on whether the board's finding that it would not be "practicable and reasonable" to adhere to land division lines is supported by substantial evidence. *See Anstey,* 292 N.W.2d at 389 (Evidence is substantial if a reasonable mind would find it adequate to reach a conclusion.).

In *Anstey,* we held that the conclusion of the agency regarding location of the line was "based upon engineering considerations of practicability and reasonableness which pass muster under *Hanson* and section 478.18." 292 N.W.2d at 389. The only issue was whether sufficient evidence supported the decision actually made and that "[w]e need not attempt to decide whether [the board] was right; that is an engineering issue, not a legal one." *Id.*

In this case, the board noted that the engineering testimony supported the use of the existing right-of-way. In fact, engineers for Midwest Power, the board, and the Consumer Advocate all agreed. The partnership did not present engineering testimony to rebut it.

The board concluded that the use of the existing route would minimize the interference with the use of land and reduce disruption to landowners. Construction of the new line and revamping of the old line simultaneously would reduce the need for additional land acquisition by using existing transmission line easements. It further found that major tree and brush clearing would not be required (an environmental concern) and that the use of existing and previous field entrances will minimize disruption to the land. In addition, substitution of single-pole structures will decrease the amount of land needed for each structure and the total number of structures required. Longer spans and fewer support structures will reduce construction and maintenance impacts. The board concluded that "[t]he use of the existing 161 kV route is ... the most reasonable and practical from the points of land usage, environmental impact, and economics."

Without attempting to decide whether the board's decision was "right" under section 478.18, we believe its conclusion that new construction along division lines would not be practicable or reasonable under the circumstances is supported by substantial evidence. *See Anstey,* 292 N.W.2d at 389. We therefore affirm.

**AFFIRMED.**

All Justices concur except McGIVERIN, C.J., and ANDREASEN and TERNUS, JJ., who take no part.